**KNIGHT LAW GROUP LLP**
Steve Mikhov (SBN 224676)
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 552-2250
Facsimile: (310) 552-7973

**LAW OFFICES OF MICHAEL H. ROSENSTEIN, LC**
Michael H. Rosenstein (SBN 169091)
Email:   mrosenstein@rose-law.com
Brian T. Shippen-Murray (SBN 288188)
Email:   bmurray@rose-lawoffice.com
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 286-0275
Facsimile: (310) 286-0274
Attorneys for Plaintiffs
MICHAEL MANSHOORY and MIKE MANSHOORY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MICHAEL MANSHOORY and MIKE MANSHOORY,<br><br>Plaintiffs,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No. **2:17-cv-6714 SVW (MRWx)**<br><br>**[Assigned to the Hon. Stephen V. Wilson]**<br><br>**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Pre-Trial Conference: April 9, 2018<br>Trial Date: April 17, 2018 |

Pursuant to Local Rule 16-4, Plaintiffs Michael Manshoory and Mike Manshoory ("Plaintiffs") respectfully submit the following Memorandum of Contentions of Fact and Law.

**1. SUMMARY OF PLAINTIFF'S CLAIMS**

A. CLAIM1: Defendant BMW of North America, LLC breached the express warranties that accompanied the lease of Subject Vehicle to Plaintiffs, thereby violating the Song-Beverly Consumer Warranty Act, California Civil Code § 1790 et seq.;

B. CLAIM 2: Defendant BMW of North America, LLC breached the implied warranties that accompanied the lease of Subject Vehicle to Plaintiffs, thereby violating the Song-Beverly Consumer Warranty Act, California Civil Code § 1790 et seq.;

**2. THE ELEMENTS OF PLAINTIFFS' CLAIMS**

Claim 1: Defendant BMW of North America LLC breached the express warranties that accompanied the lease of Subject Vehicle to Plaintiffs, thereby violating the Song-Beverly Consumer Warranty Act, California Civil Code § 1790 et seq.

Plaintiffs claim that Defendant BMW of North America, LLC ("BMW NA") breached the express warranties that accompanied the lease of the 2014 BMW 6501 ("Subject Vehicle") when it failed to promptly replace the Subject Vehicle after a reasonable number of repair opportunities, thereby violating the Song-Beverly Consumer Warranty Act ("the Act"). To establish this claim, Plaintiff must prove the following:

(1) That Plaintiffs leased a new motor vehicle manufactured or distributed by BMW NA;

(2) That BMW NA gave Plaintiffs a written warranty;

(3) That the Subject Vehicle had a defect covered by the warranty that substantially impaired its use, value, or safety to a reasonable person in Plaintiffs' situation;

(4) That Plaintiffs delivered the Subject Vehicle to BMW NA's authorized repair facilities for repair of the defect(s);

(5) That BMW NA or its authorized repair facility failed to repair the Subject Vehicle to match the written warranty after a reasonable number of opportunities to do so; and

(6) That BMW NA did not promptly replace or buy back the vehicle.

Judicial Council of California Civil Jury Instructions No. 3201 (2016).

BMW NA admits to elements 1, 3, 4, and 5 in its Answer to Plaintiffs' First Amended Complaint. (Answer, ¶¶ 10, 12, 15.)

Each time the Subject Vehicle was given to BMW NA or its representative for repair counts as an opportunity to repair, even if BMW NA or its representative did not do any repair work. Judicial Council of California Civil Jury Instructions No. 3202 (2016); (*Silvio v. Ford Motor Co.* (2003) 109 Cal.App.4th 1205, 1208 [135 Cal.Rptr.2d 846].

California Civil Code section 1793.2, subd. (d) provides, in part:

(1) Except as provided in paragraph (2), if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer. . . .

(2) If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable

PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer.

"[T]he only affirmative step the Act imposes on consumers is to 'permit[] the manufacturer a reasonable *opportunity* to repair the vehicle.' Whether or not the manufacturer's agents choose to take advantage of the opportunity, or are unable despite that opportunity to isolate and make an effort to repair the problem, are matters for which the consumer is not responsible." (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1103-1104 [109 Cal.Rptr.2d 583], internal citation omitted.) "Section 1793.2(d) requires the manufacturer to afford the specified remedies of restitution or replacement if that manufacturer is unable to repair the vehicle 'after a reasonable number of attempts.' 'Attempts' is plural. The statute does not require the manufacturer to make restitution or replace a vehicle if it has had only one opportunity to repair that vehicle." (*Silvio v. Ford Motor Co.* (2003) 109 Cal.App.4th 1205, 1208 [135 Cal.Rptr.2d 846].) "Whether the impairment is substantial is determined by an objective test, based on what a reasonable person would understand to be a defect. This test is applied, however, within the specific circumstances of the buyer." (*Lundy v. Ford Motor Co.* (2001) 87 Cal.App.4th 472, 478 [104 Cal.Rptr.2d 545], internal citations omitted.) "The issue of whether the problems constituted substantial impairment is one for the trier of fact." (*Schreidel v. American Honda Motor Co.* (1995) 34 Cal.App.4th 1242, 1250 [40 Cal.Rptr.2d 576], internal citations omitted.)

Claim 2:    Defendant BMW NA breached the implied warranties
            that accompanied the lease of Subject Vehicle to Plaintiffs,
            thereby violating the Act, California Civil Code § 1790 et seq.

Plaintiffs claim that BMW NA breached the implied warranties that accompanied the sale of the Subject Vehicle when it sold the Subject Vehicle with a

defect, thereby violating the Act. To establish this claim, Plaintiffs must prove the following:

    (1)    That Plaintiffs leased a new motor vehicle manufactured or distributed by BMW NA;

    (2)    That at the time of the lease BMW NA was in the business of distributing and selling vehicles; and

    (3)    That the Subject Vehicle was (i) no of the same quality as those generally acceptable in the trade; or (ii) not fit for the ordinary purpose for which such goods are used; or (iii) did not measure up to the promises or facts that accompanied the sale.

Judicial Council of California Civil Jury Instructions No. 3210 (2016).

    BMW NA admits in its Answer to Plaintiffs' First Amended Complaint that the Subject Vehicle was sold subject to the implied warranty of merchantability. (Answer, ¶ 11.)

    It is not necessary for Plaintiffs to prove the cause of a defect of the Subject Vehicle, because the Act does not require a consumer to prove the cause of the defect or failure, only that the consumer good did not conform to the warranty. (See *Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1102, fn. 8 [109 Cal.Rptr.2d 583].)

    Civil Code section 1794, subd. (a) provides: "Any buyer of consumer goods who is damaged by a failure to comply with any obligation . . . under an implied . . . warranty . . . may bring an action for the recovery of damages and other legal and equitable relief." Civil Code section 1791.1(a) provides:

"Implied warranty of merchantability" . . . means that the consumer goods meet each of the following:

    (1) Pass without objection in the trade under the contract description.

    (2) Are fit for the ordinary purposes for which such goods are used.

PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the
container or label.

Commercial Code section 2714(2) provides: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

**3.     BRIEF DESCRIPTION OF KEY EVIDENCE IN SUPPORT OF PLAINTIFFS' CLAIMS**

A.     CLAIM 1:   Defendant BMW of North America LLC breached the express warranties that accompanied the lease of Subject Vehicle to Plaintiffs, thereby violating the Song-Beverly Consumer Warranty Act, California Civil Code § 1790 et seq.

Plaintiffs will introduce the lease agreement, which establishes that Plaintiffs leased the Subject Vehicle that was distributed by BMW NA and also established that the vehicle was leased with coverage of all warranties, making the Subject Vehicle a "new motor vehicle" within the meaning of the statute.  Plaintiffs will introduce the Owner's Manual and Warranty Booklet which also establishes that when the Subject Vehicle was leased the manufacturer's warranty had not expired.

Plaintiffs will introduce the manufacturer's warranty booklet, which establishes BMW NA gave Plaintiffs a written warranty.

Plaintiffs will introduce repair orders and related documentation created by BMW NA's authorized repair facilities and will provide testimony from BMW NA's authorized dealership personnel related to repairs and repair opportunities given for Plaintiffs' Subject Vehicle to establish a reasonable number of repair attempts made by BMW NA's authorized repair facility, Beverly Hills BMW.

PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  Plaintiffs will introduce evidence, will testify themselves, and will call Greg

2  Barnett, a qualified expert, to testify that the Subject Vehicle had defect(s) covered

3  by express warranties that substantially impaired its use, value or safety to a

4  reasonable person in Plaintiffs' situation.

5  Plaintiffs will introduce evidence and qualified expert testimony that BMW

6  NA and its authorized repair facilities failed to repair the Subject Vehicle to match

7  the written warranty after a reasonable number of opportunities to do so.

8  Plaintiffs will introduce evidence that the BMW NA failed to replace the

9  Subject Vehicle, including evidence and testimony of Plaintiffs' contacts with BMW

10  NA and testimony proving that BMW NA did not comply with the Song-Beverly

11  Act and promptly offer to repurchase or replace the Subject Vehicle when it qualified

12  for such relief.

13  In support of their claim for civil penalties under the Song-Beverly Act,

14  Plaintiffs will introduce evidence that BMW NA knew of the substantial defect(s) in

15  the Subject Vehicle, knew of Plaintiffs' complaints regarding the vehicle, knew of

16  Plaintiffs' presentations of the Subject Vehicle for repairs, and yet still did not

17  comply with its obligation to promptly repurchase the Subject Vehicle when it

18  qualified.  Plaintiffs will introduce evidence and provide testimony from BMW

19  NA's Person Most Knowledgeable about the history of Plaintiffs' contacts with

20  BMW NA, and how BMW NA tried time and again to cheat Plaintiffs out of their

21  statutory rights. Plaintiffs will also prove that BMA NA has established toothless

22  protocols with its dealerships with regards to repurchasing or replacing vehicles that

23  qualify under the Song-Beverly Act.

24

25  B.  CLAIM 2:  Defendant BMA NA breached the implied warranties that
       accompanied the lease of Subject Vehicle to Plaintiffs, thereby violating the

26       Song-Beverly Consumer Warranty Act, California Civil Code § 1790 et seq.

27

28

Plaintiffs will introduce the lease agreement, which establishes that Plaintiffs leased the Subject Vehicle that was distributed by BMW NA.

Plaintiffs will introduce evidence and testimony proving that at the time they leased the Subject Vehicle, BMW NA was in the business of distributing and selling the Subject Vehicle through its authorized dealerships.

Plaintiffs will introduce evidence and testimony that the Subject Vehicle was not of the same quality as those generally acceptable in the trade and was not fit for the ordinary purposes for which such goods are used. Plaintiffs will introduce the repair orders, testimony from dealership personnel who performed repairs and interacted with the Subject Vehicle at the repair visits, and expert testimony regarding the defects and repairs performed attempting to address those defects.

## 4.   SUMMARY OF DEFENDANT'S ANTICIPATED AFFIRMATIVE DEFENSES

   a)  Second Affirmative Defense – BMW NA was excused from repurchasing the vehicle pursuant to Civil Code section 1793.2(d)(2)(B) because it promptly made the offer to perform, but plaintiffs prevented the repurchase from taking place. (Civ. Code, §§ 1511, 1512.)

   b)  Third Affirmative Defense – Any obligation of BMW NA to repurchase the vehicle was extinguished because BMW NA offered to perform pursuant to Civil Code section 1793.2(d)(2)(B). (Civ. Code, § 1485.)

   c)  Fourth Affirmative Defense – Plaintiffs are not entitled to recover prejudgment interest and even if they were, interest stopped accruing at the moment BMW NA offered to perform by repurchasing the vehicle pursuant to Civil Code section 1793.2(d)(2)(B). (Civ. Code, § 1504.)

   d)  Fifth Affirmative Defense – Plaintiffs are not entitled to recover a civil

penalty because BMW NA promptly offered to repurchase the vehicle from plaintiffs pursuant to Civil Code section 1793.2(d)(2).

## 5.   BRIEF DESCRIPTION OF KEY EVIDENCE RELIED UPON IN OPPOSITION TO EACH AFFIRMATIVE DEFENSE

### a.   Second, Third, and Fifth Affirmative Defenses

1.    The Law Imposes an Affirmative Duty on Manufacturers

The Song-Beverly Act ("the Act") is a remedial statute designed to protect consumers who have purchased products covered by an express warranty.  One of the most significant protections afforded by the Act requires a manufacturer to replace vehicles or reimburse the buyer in an amount equal to the purchase price paid by the buyer if the manufacturer or its authorized repair facility is unable to conform the vehicle to the written warranty after a reasonable number of opportunities to do so.  (Civ. Code, § 1793.2(d); *Martinez v. Kia Motors America, Inc.* (2011) 193 Cal.App.4th 187, 191.)

The Song-Beverly Act does not require that a consumer request the manufacturer repurchase the vehicle, to trigger the manufacturer's duty to promptly repurchase or replace.  (*Krotin*, *supra,* 38 Cal.App.4th at 301.)  "[T]he only affirmative step the Act imposes on consumers is to 'permit[] the manufacturer a reasonable opportunity to repair the vehicle.' Whether or not the manufacturer's agents choose to take advantage of the opportunity, or are unable despite that opportunity to isolate and make an effort to repair the problem, are matters for which the consumer is not responsible." (*Oregel*, *supra,* 90 Cal.App.4th at 1103–04 (internal citation omitted).)

In fact, the Act imposes an affirmative duty upon the manufacturer.  In the 1995 case of *Krotin v. Porsche,* the court addressed the "interplay between the manufacturer's responsibility under the Act to provide prompt restitution or

replacement and the buyer's obligation under the Commercial Code to reject or revoke acceptance of the vehicle a reasonable time after discovery of defects covered under warranty." (*Krotin*, *supra,* 38 Cal.App.4th at 301.) The court held:

> **[T]he manufacturer has an affirmative duty to replace a vehicle or make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts, and the buyer need not reject or revoke acceptance of the vehicle at any time. The buyer need only provide the manufacturer with a reasonable opportunity to fix the vehicle.**

(*Krotin*, *supra,* 38 Cal.App.4th at 303.) The court reasoned that manufacturers are "capable of becoming aware of every failed repair attempt" and have access to the information required to determine whether vehicles are lemons without a consumer's specific request for relief:

> An automobile manufacturer need not read minds to determine which vehicles are defective; <u>it need only read its dealers' service records</u>. The Act requires the manufacturer to maintain or to designate and authorize service and repair facilities in the state (Civ. Code, § 1793.2, subd. (a)(l)(A)); i.e., usually, automobile dealerships with service departments. [] Computerized recordkeeping at dealership service departments could easily facilitate this task, even without any direct contact from the consumer to the manufacturer or any request for replacement or reimbursement to the dealership. It is thus apparent that a manufacturer need not be "clairvoyant"; it need only demonstrate more initiative in honoring warranties.

(*Id.,* emphasis added.) The court concluded that a jury instruction which required a consumer to "reject or revoke acceptance within a reasonable time was error." (*Id*. at 304.)

In 2010, in the case of *Lukather v. General Motors*, the Court of Appeal reaffirmed *Krotin* and once again addressed the issue of the manufacturer's affirmative duty to repurchase or replace a vehicle when determining whether the

PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

evidence was sufficient to support the trial court's findings that the manufacturer willfully violated the Act. (*Lukather*, *supra,* 181 Cal.App.4th at 1049.) The court noted that, "the Act does not require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties—other than, of course, permitting the manufacturer   a reasonable opportunity to repair the vehicle." (*Id*. at 1050.) The court quoted *Krotin* with approval stating that, "the manufacturer has an affirmative duty to replace a vehicle or make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts, and the buyer need not reject or revoke acceptance of the vehicle at any time. The buyer need only provide the manufacturer with a reasonable opportunity to fix the vehicle." (*Ibid*.)

   **2.    BMW NA had an Affirmative Duty to Promptly Repurchase or Replace the Subject Vehicle When it was Unable to Conform the Subject Vehicle to Warranty After Being Afforded a Reasonable Number of Repair Attempts to Do So.**

   Each time a vehicle is presented to the manufacturer or its authorized repair facility for repair counts as an opportunity to repair, even if no repair work is done. (CACI No. 3202; *Oregel v. American Isuzu Motors, Inc*. (2001) 90 Cal.App.4th 1094, 1103.) The trier of fact should consider all the circumstances surrounding each repair visit in determining whether a manufacturer had a reasonable number of opportunities to fix the vehicle. (CACI No. 3202; *Silvio v. Ford Motor Co.* (2003) 109 Cal.App.4th 1205, 1208.)  Further, Civil Code section 1793.2(b) requires that vehicles be "repaired so as to conform to the applicable warranties within 30 days." (*See also* CACI No. 3205.)

   Plaintiffs' use of Subject Vehicle was severely limited due to the repeated dealership presentations and extended periods of time in the shop for repairs.  The value of the Subject Vehicle was substantially impaired as a result of the defects

within the Subject Vehicle, the repeated repairs and BMW NA and its authorized repair facilities' inability to conform the Subject Vehicle to warranty.  Lastly, the defects in the Subject Vehicle severely impacted the vehicle's safety.

Plaintiffs presented the Subject Vehicle to an authorized repair facility on an overwhelming number of occasions to remedy a wide scope of repeated and serious issues.  Without question Plaintiffs fulfilled their only duty under the Act which is to allow BMW NA a reasonable opportunity to repair the vehicle. *Krotin* and *Lukather* plainly hold, without contradiction that BMW NA had an affirmative duty to review its service records and promptly offer to repurchase or replace the Subject Vehicle when BMW NA could not conform the vehicle to the written warranty after a reasonable number of repair attempts.

Plaintiffs requested BMW NA repurchase the Subject Vehicle on November 14, 2016. By November 14, 2016, Plaintiffs had brought the Subject Vehicle to BMW NA authorized dealerships for repairs of serious defects on no less than nine separate occasions. Plaintiffs must have given BMW NA and its authorized repair facilities at least two opportunities to fix the Subject Vehicle in order bring suit under the Act. (CACI No. 3202; *Silvio v. Ford Motor Co.* (2003) 109 Cal.App.4th 1205, 1208.)  As of November 2016, BMW NA should have known that the Subject Vehicle qualified for repurchase or replacement, and when the Subject Vehicle returned for repair of major issues, BMW NA should have reached out to Plaintiffs to offer repurchase or replacement to comply with its affirmative duty under the Act. The Act requires **prompt** compliance, and BMW NA's actions in this case, denying a repurchase request, forcing Plaintiffs to make another request when it has access to all repair records in nearly real-time to compensate its dealerships for warranty repairs, cannot be categorized as "prompt."

Accordingly, BMW NA's affirmative defenses attempting to shield it from paying the civil penalty in this case are meritless. BMW NA did not promptly

PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

comply with the Act, and did not meet its affirmative duty. Plaintiffs exceeded their duties under the Act by reaching out to BMW NA to ask for repurchase. BMW NA's dilatory conduct merits the civil penalty, which is in effect to punish BMW NA or discourage it from committing such violations in the future. (CACI No. 3244; *Kwan v. Mercedes Benz of N. Am.* (1994) 23 Cal.App.4th 174, 184.)

### b. Fourth Affirmative Defense

If and when Plaintiffs are the prevailing party either by jury verdict or pre-trial settlement, Plaintiffs will seek prejudgment interest under Code of Civil Procedure section 3287, subd. (a) or alternatively under section 3287, subd. (b). Plaintiffs will request prejudgment interest and will not tie the payment of such interest to the repurchase offer BMW NA finally extended to Plaintiffs, but according to the Code of Civil Procedure.

As a threshold matter applicable to either (a) or (b), the legal rate of prejudgment interest on claims arising from the breach of written agreement is ten percent (10%). (Civ. Code, § 3298(b).)

### 1.  Plaintiffs Are Entitled to Prejudgment Interest Under Subd. (a).

"Every person who is entitled to recover damages <u>certain, or capable of being made certain by calculation</u>, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day…." (Civil Code § 3287, subd. (a) [emphasis added].)

Prejudgment interest is awarded to compensate a party for the loss of use of property and is properly awarded in both tort and contract actions. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 663; *Big Bear Properties, Inc. v. Gherman* (1979) 95 Cal.App.3d 908, 914.) A plaintiff who is entitled to recover "damages certain or capable of being made certain by calculation" is also entitled to interest from the time the right to recovery arises. (Civil Code § 3287(a); *see, Cortez*

*v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 174-75.) "[T]he court has no discretion, but must award prejudgment interest upon request, from the first day there exists both a breach and a liquidated claim." (*North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, 828.)

In general, <u>courts apply a liberal construction</u> in determining whether a claim is certain or "liquidated." (*Chesapeake Industries, Inc. v. Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 907 [emphasis added].) The test for determining certainty under § 3287(a) is <u>whether the defendant knew the amount of damages</u> owed to the plaintiff or could have computed the amount from reasonably available information. (*Id.*) "A dispute concerning liability <u>does not preclude prejudgment interest</u> in a civil action." (*Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 517.)

Prejudgment interest has been found to be available in vehicle cases for violation of warranty for over forty (40) years. In *Leaf v. Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, the Court of Appeal held that in a claim to recover the purchase price of an automobile based upon the failure to repair certain defects under a written warranty, damages were "certain" for the purposes of prejudgment interest because the amount of damages (i.e., the value of the vehicle) could be determined by looking at the purchase contract and calculating the damage therefrom. (*Leaf v. Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 376.) "Under this provision [3287(a)], prejudgment interest is allowable where the amount due plaintiff is fixed by the terms of the contract, <u>or is readily ascertainable</u> by reference to the well-established market values." (*Id.* at 375.) The court concluded that "since the requirement of Civil Code § 3287 regarding certainty of damage was met, plaintiffs were entitled, as a matter

of right, to recover prejudgment interest on the sum awarded from the time such sum because due." (*Id.*)

In a more recent case specifically under the Song-Beverly Act, the award of prejudgment interest was confirmed under Civil Code section 3287 even if though it is not specifically authorized by the statute. (*See Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 1004, 1009-1011.) "Nothing in the Song-Beverly Consumer Warranty Act bars recovery of prejudgment interest." (*Id.* at 1010.)  A "trial court had jurisdiction to award [the plaintiff] prejudgment interest." (*Id.* at 1011.) Accordingly, *Doppes* shows that prejudgment interest is recoverable under Plaintiffs' claims here. Other Song-Beverly cases have also upheld awards for prejudgment interest. (*See Lukather v. General Motors, LLC* (2010) 181 Cal.App.4th 1041, 1053 [finding trial court properly awarded prejudgment interest].)

In this case, like *Leaf, Doppes*, *and Lukather*, Plaintiffs asserted a claim against BMW NA to recover the purchase price of a defective vehicle based upon claims including a breach of the express written warranty and a breach of the implied warranty of merchantability. BMW NA will likely cite to *Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718 to argue the proposition that prejudgment interest is not awardable in this case. However, *Doppes* came subsequent to *Duale*, and in fact awarded prejudgment interest and distinguished *Duale* based on the facts of that case specifically.

In *Duale*, the court found that prejudgment interest was not available in that case because there was a dispute about the amount of damages and a dispute as to liability. (*See Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718, 728-730.) BMW NA may use *Duale* to suggest that anytime there is a disagreement about the amount of damages, or even if liability is contested, that no prejudgment interest

PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

may be sought. Although the parties did not agree about the actual amount of the restitution damages, *Duale* cannot stand for the blanket proposition that any time there is any disagreement about the <u>precise amount of damages</u>, then prejudgment interest is precluded. The mere fact that there is a slight difference between the amount of the damages claimed and the amount of the award does not preclude an award of prejudgment interest. (*Coleman Engineering Co. v. North American Aviation, Inc.* (1966) 65 Cal.2d 396, 408.) "The existence of a bona fide dispute between the parties as to the amount owing under an express contract does not render that sum 'unliquidated.'" *Rabinowitch v. California Western Gas Co.* (1967) 257 Cal. App. 2d 150, 161.)  If that were the case, then a manufacturer defendant could thwart prejudgment interest in every case just by simply saying it disagrees with Plaintiffs' calculation under the statute.

Even if *Duale* was meant to have the broad sweeping effect of undermining a plaintiff's claim for prejudgment interest because there was a denial of liability or a disagreement about damages, *Duale* does <u>not</u> control on the facts of <u>this case</u>. As stated above, the test for determining certainty under § 3287(a) is <u>whether the defendant knew the amount of damages</u> owed to the plaintiff or could have computed the amount from reasonably available information. (*Chesapeake Industries, Inc, supra,* 149 Cal.App.3d at 907.) Here, BMW NA in fact knew the amount of damages and/or it could have computed it from reasonably available information. The sales contract contains the price of the vehicle, and Plaintiffs financed the Subject Vehicle with BMW Financing. The repair orders and BMW NA's internal warranty documents show the mileage on the vehicle for the first time it was presented for repair, which gives the basis for the statutory mileage offset.  Thus, the restitution

-15-

1  award was liquidated in this case or at least was capable of being made certain by

2  calculation. Therefore, *Duale* does not apply to this case.

3       2.   **Plaintiffs Are Entitled to Prejudgment Interest Under Subd. (b).**

4       Even if the court were to accept *Duale* here, the case does not outright

5  prohibit prejudgment interest because it is only discusses section 3287, subd. (a),

6  and is silent as to section 3287, subd. (b).

7       The Court has discretion to award prejudgment interest under § 3287, subd.

8  (b). (*North Oakland Medical Clinic v. Rodgers* (1998) 65 Cal.App.4th 824, 829.)

9  Section 3287, subd. (b) "seeks to balance the concern for fairness to the debtor

10  against the concern for full compensation to the wronged party." (*Lewis C. Nelson

11  & Sons, Inc. v. Clovis Unified Sch. Dist.* (2001) 90 Cal.App.4th 64, 69.)

12       A claim for violation of the Song-Beverly Act is a claim for breach of express

13  warranty, which is a cause of action in contract, and case law has so indicated. In

14  *Bishop v Hyundai* (1996) 44 Cal.App.4th 750, the plaintiff won at trial and received

15  damages for emotional distress and loss of use, which were then trebled as part of

16  the civil penalty component. The Appellate Court in *Bishop* held that the jury's

17  award of damage for "loss of use" and emotional distress were <u>barred</u> by provisions

18  of the act that limited compensatory damages to those available to a buyer for a

19  seller's breach of the sale contract, citing to Civil Code § 1794. The court held lemon

20  law cases are breach of contract actions.  (*See, Bishop, supra,* 44 Cal.App.4th at 754-

21  758.) The Court expressly held that "[t]he award for emotional damages must also

22  be reversed for the reasons stated above; because they may not be recovered in an

23  action for breach of contract, they are unavailable in an action based on the Act."

24

25       Accordingly, since this case sounds in contract, the Court has discretion and

26  may award prejudgment interest under § 3287, subd. (b) even if it were persuaded

27  that BMW NA did not know the precise amount of damages to award interest under

28

§ 3287, subd. (a).

**7.   ANTICIPATED EVIDENTIARY ISSUES**

Plaintiffs do not anticipate any evidentiary issues at this time.

**8.   BIFURCATION OF ISSUES**

Plaintiffs do not request any bifurcation of issues.

**9.   JURY TRIAL**

Plaintiffs and BMW NA have requested a jury trial.

**10.   ATTORNEYS' FEES**

The Song-Beverly Act provides that a prevailing plaintiff <u>shall recover</u> <u>attorney's fees and costs</u>.   Civ. Code §1794, subd. (d). Under this section, fees awarded are to be based on "actual time expended."   In *Drouin v. Fleetwood Enterprises* (1985) 163 Cal.App.3d 486, 493, the Court described such attorney's fees provisions as follows:

> It should be noted that an attorney's fee is to be based upon actual time expended rather than being tied to a percentage of the recovery.   This requirement is designed to make the pursuit of consumer rights involving inexpensive consumer products economically feasible.

In this case, when Plaintiffs prevails on their claim, Plaintiffs will petition the Court for an award of reasonable attorney's fees and costs of suit.

**11.   ABANDONMENT OF ISSUES**

Plaintiffs do not abandon any additional claims against BMW NA.

DATED:     March 19, 2018

Respectfully Submitted,

**LAW OFFICES OF MICHAEL H. ROSENSTEIN, LC**

By:     _/s/ Michael H. Rosenstein
Michael H. Rosenstein
Brian T. Shippen-Murray
Attorneys for Plaintiffs

-17-

PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW