1  BOWMAN AND BROOKE LLP
   Brian Takahashi (SBN: 146505)
2  E-mail: Brian.Takashashi@bowmanandbrooke.com
   Richard L. Stuhlbarg (SBN: 180631)
3  E-mail: Richard.Stuhlbarg@bowmanandbrooke.com
   Corinne D. Orquiola (SBN: 226969)
4  E-mail: Corinne.Orquiola@bowmanandbrooke.com
   970 West 190th Street, Suite 700
5  Torrance, California 90502
   Tel No: 310/ 768-3068
6  Fax No: 310/ 719-1019

7  Attorneys for Defendant
   BMW OF NORTH AMERICA, LLC
8

9            **UNITED STATES DISTRICT COURT**

10  **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

11

12  MICHAEL MANSHOORY and          **CASE NO.: 2:17-cv-6714 SVW (MRWx)**
    MIKE MANSHOORY,
13                                 **[Assigned to the Hon. Stephen V. Wilson]**
                 Plaintiffs,
14                                 **MEMORANDUM OF CONTENTIONS**
15       vs.                       **OF FACT AND LAW**

    BMW OF NORTH AMERICA,
16  LLC, a Delaware Limited Liability  **Action Filed:    April 28, 2017**
    Company,                           **Trial:           April 17, 2018**
17
                 Defendant.
18

19

20       TO THE HONORABLE COURT:

21       PLEASE TAKE NOTICE THAT Defendant BMW of North America, LLC

22  ("BMW NA") hereby submits the attached Memorandum of Contentions of Fact

23  and Law pursuant to Local Rule 16-4.

24  DATED: March 19, 2018              BOWMAN AND BROOKE LLP

25                         BY:    /s/ Corinne D. Orquiola
                                 Brian Takahashi
26                               Richard L. Stuhlbarg
                                 Corinne D. Orquiola
27                               Attorneys for Defendant
                                 BMW OF NORTH AMERICA, LLC
28

## A.    SUMMARY STATEMENT

This automotive breach of warranty action involves a leased 2014 BMW 650I CV, VIN WBAYP9C52ED169248 ("Subject Vehicle") which plaintiffs Michael Manshoory and Mike Manshoory leased from Beverly Hills BMW on December 15, 2013.  Defendant BMW of North America, LLC's ("BMW NA") was its distributor.  On November 16, 2016, Plaintiffs requested that BMW NA repurchase the vehicle complaining of engine knocks, vehicle shaking, and that the check engine light would come on.  BMW NA promptly evaluated their claim and denied it in good faith.  Plaintiffs turned in the Subject Vehicle on December 15, 2017 at lease end four months before the lawsuit filed.  There were no issues reported on the Lease-End Inspection form.

On April 28, 2016, plaintiff filed this action alleging (1) Violation of the Song Beverly Act - Breach of Express Warranty; (2) Violation of Song Beverly Act - Breach of Implied Warranty: and (3) Violation of Song Beverly Act 1793.2. BMW NA denies plaintiff's allegations.  First, Plaintiffs should not be entitled to restitution damages pursuant to Civil Code section 1793.2(d)(2)(B) because Plaintiffs failed to preserve the Subject Vehicle-the most crucial piece of evidence. BMW NA further contends that the Subject Vehicle was fit for its ordinary purpose during the first year, and, further, that plaintiff never revoked acceptance timely, therefore, the remedy for breach of implied warranty is diminution in value, at best.  BMW NA further contends that no warranty concern has been presented for repair an unreasonable number of repair attempts, plaintiffs misused or abused the vehicle and that any concerns that Plaintiffs may have had were caused by unreasonable or unreasonable use.  Furthermore, BMW NA contends that plaintiffs' warranty concerns have not substantially impaired use, value or safety, and that BMW NA did not willfully violate the Song-Beverly Act.

/ / /

/ / /

**B.    REQUIRED ELEMENTS TO PROVE PLAINTIFF'S CLAIMS**

    **a.    SONG-BEVERLY CONSUMER WARRANTY ACT -**
        **BREACH OF IMPLIED WARRANTY**

    1.    Plaintiffs leased a vehicle (i.e. the Subject Vehicle) distributed by BMW NA.

    2.    The Subject Vehicle had a defect, at time of lease, which rendered it unfit for its ordinary purpose of providing transportation.

    3.    The defect manifested in the first year of the lease.

    4.    Plaintiffs revoked acceptance of the Subject Vehicle within a reasonable time after discovering the defect.

    5.    If there was no timely revocation of acceptance, Plaintiffs sustained damages caused by the breach of the implied warranty of merchantability.

    **b.    SONG-BEVERLY CONSUMER WARRANTY ACT -**
        **BREACH OF EXPRESS WARRANTY**

    1.    Plaintiffs leased a vehicle (i.e. the Subject Vehicle) distributed by BMW NA.

    2.    BMW NA gave plaintiffs a written warranty with the Subject Vehicle;

    3.    The Subject Vehicle had a nonconformity covered by the written warranty that substantially impaired its use, value, or safety to a reasonable person in Plaintiffs' situation.

    4.    Plaintiffs delivered the vehicle to BMW NA or its authorized repair facilities for repair of the substantially impairing nonconformity.

    5.    BMW NA failed to repair the alleged nonconformity after a reasonable number of opportunities to do so.

    6.    BMW NA did not repurchase or replace the Subject Vehicle.

    7.    BMW NA's failure to repurchase or replace the Subject Vehicle was willful.

/ / /

## C.   SUMMARY OF KEY EVIDENCE IN OPPOSITION

### 1.   Implied Warranty

Under Song-Beverly, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." (Civ. Code, § 1792.) Merchantability means that the goods: (1) Pass without objection in the trade under the contract description; (2) Are fit for the ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and labeled; and (4) Conform to the promises or affirmations of fact made on the container or label. (Civ. Code, § 1791.1, subd. (a).) The core test of merchantability is fitness for the ordinary purpose for which such goods are used. (See Mexia v. Rinker Boat Co., Inc. (2009) 174 Cal.App.4th 1297.)

A breach of the warranty of merchantability occurs if the product lacks even the most basic degree or fitness for ordinary use. For example, in Mocek v. Alfa Leisure, Inc. (2003) 114 Cal.App.4th 402, the plaintiff bought a fifth-wheel travel trailer. Shortly after he connected the trailer to a power source, the electrical outlets and appliances ceased operating. When he turned on the TV/VCR in the trailer the next day, it started to smoke. He then tried resetting the circuit breakers but sparks and smoke came from the breaker panel. Plaintiff never used the trailer and sued. Because the trailer lacked even the most basic degree or fitness for ordinary use, the Court of Appeal affirmed a judgment for plaintiff based on breach of the implied warranty of merchantability in the amount of the purchase price, with interest, conditioned upon a return of the trailer.

The implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality. A vehicle is fit for its ordinary purpose if it is in safe condition and substantially free from defects. (See American Suzuki Motor Corp. v. Superior Court (1995) 37 Cal.App.4th 1291; Isip v. Mercedes-

Benz USA, LLC (2007) 155 Cal.App.4th 19; Mexia v. Rinker Boat Co., Inc. (2009) 174 Cal.App.4th 1297.)

To prove a breach of the implied warranty of merchantability, plaintiffs must prove:

1. That plaintiffs bought or leased a vehicle distributed by BMW NA;

2. That at the time of the purchase or lease, BMW NA was in the business of distributing motor vehicles;

3. That plaintiffs' vehicle was not of the same quality as those generally acceptable in the trade or was not fit for the ordinary purposes for which such goods are used; and

4. That plaintiffs took reasonable steps to notify BMW NA within a reasonable time that the vehicle did not have the quality that a buyer would reasonably expect. (See CACI 3210.)

There was no breach of the implied warranty of merchantability in this case. BMW NA contends that the subject vehicle was fit for the ordinary purposes for which vehicles are used based on the lease allowance and mileage driven.

Further, even if plaintiffs prove a breach of implied warranty, their damages are limited diminution in value because they did not timely revoke acceptance. Civil Code section 1791.1, subdivision (d) provides: "Any buyer of consumer goods injured by a breach of the implied warranty of merchantability ... has the remedies provided in Chapter 6 (commencing with 2601) and Chapter 7 (commencing with Section 2701) of Division 2 of the Commercial Code, and, in any action brought under such provisions, Section 1794 of this chapter shall apply."

Civil Code section 1794, subdivision (a), provides: "Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief." Subdivision (b)(1) of the same statute continues: "Where the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right

1  to cancel the sale, Sections 2711, 2712, and 2713 of the Commercial Code shall
2  apply."

3     The California Uniform Commercial Code does not distinguish between
4  express warranties and implied warranties, with respect to the remedies available
5  for breach of warranty.  It provides the same measures of damage for breach of an
6  express warranty, as for breach of the implied warranty of merchantability.

7     California Uniform Commercial Code section 2711 provides that when a
8  buyer rightfully rejects or justifiably revokes acceptance of goods, the buyer may
9  cancel and recover specified damages "in addition to recovering so much of the
10 price as has been paid[.]"  Thus, in the event of a breach of the implied warranty of
11 merchantability, the buyer is entitled to cancel the contract and recover any
12 amounts paid toward the purchase of the goods.  (Civ. Code, § 1791.1, subd. (d),
13 1794, subds. (a), (b)(1); Cal. U. Com. Code, § 2711.)  (Music Acceptance Corp. v.
14 Lofing (1995) 32 Cal.App.4th 610.)  If the buyer has financed her purchase, she
15 can be relieved of any further obligations under the agreement.  (Id. at 622.)  (See
16 also Mocek v. Alfa Leisure, Inc. (2003) 114 Cal.App.4th 402.)

17    Rejection of goods must be within a reasonable time after their delivery or
18 tender.  It is ineffective unless the buyer seasonably notifies the seller. (Cal. U.
19 Com. Code, § 2602, subd. (1).) Once goods have been accepted, the buyer may
20 revoke his or her acceptance if the vehicle has a nonconformity that substantially
21 impairs its value to him. (Cal U. Corn. Code § 2608, subd. (1).)  Revocation of
22 acceptance must occur within a reasonable time after the buyer discovers or should
23 have discovered the ground for it and before any substantial change in condition
24 of the goods which is not caused by their own defects. It is not effective until the
25 buyer notifies the seller of it. (Cal. U. Com. Code, § 2608, subd. (2).)

26    In this case, plaintiffs did not contact BMW NA until right before the end of
27 the lease.  Plaintiffs cannot prove timely revocation.  Finally, assuming no timely
28 revocation of acceptance, the remedy for breach of implied warranty is diminution

in value.  Civil Code section 1794, subdivision (b)(2) provides that "[w]here the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform."   Commercial Code section 2714, subdivision (2) provides as follows: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."   Although DaimlerChrysler's service contract limited remedies to the cost of repairs or replacement if less than the cost of repairs, Commercial Code section 2719, subdivision (2) provides that alternative remedies may be sought if the remedy provided by contract "fail[s] of its essential purpose."

## 2.  Express Warranty

CACI 3201 sets forth the elements of a claim for breach of express warranty under Song-Beverly under the circumstances of this case, where the consumer good was a new motor vehicle.  These elements are:

(1) The plaintiff was a purchaser of a new motor vehicle;

(2) Defendant gave a written warranty concerning the vehicle;

(3) The vehicle contained a nonconformity or nonconformities covered by the warranty that substantially impaired the use, value or safety of the vehicle to a reasonable person in the position of the plaintiff;

(4) The plaintiff delivered the vehicle to the defendant or its authorized repair facilities for repair;

(5) The defendant was unable to repair the nonconformity after a reasonable number of attempts; and

(6) The defendant did not replace or repurchase the vehicle.

A manufacturer, distributor, or retailer is not liable if it successfully services or repairs a vehicle under the warranties provided.  A manufacturer may only be held liable if it fails to service or repair the vehicle to conform to its express warranty after a reasonable number of attempts to repair the claimed

"nonconformity." (Civ. Code, § 1793.2, subd. (d)(1).) A consumer is only entitled to repurchase or replacement if the same nonconformity is repeatedly subject to repair. (See Civ. Code, §§ 1793.2, subd. (d)(2) and 1793.22, subd. (b).) The relevant inquiry is whether "a reasonable number of repair attempts have been made" to repair the "same nonconformity." (See Civ. Code, § 1793.22, subd. (b).) In other words, the law does not require a manufacturer to produce a perfect vehicle; it only requires a manufacturer to repair any problems that arise that are covered by warranty.

Not every minor "defect" is an actionable "nonconformity." "Nonconformity" means a nonconformity that substantially impairs the use, value or safety of the motor vehicle to the buyer." (Civ. Code, § 1793.22, subd. (e)(1).) Only a problem that has not been remedied after a reasonable number of repair attempts which "substantially impairs the use, value or safety" of the vehicle gives rise to liability. (Civ. Code, § 1793.22, subd. (e)(1).)

A complaint is not a defect. A technical service bulletin is not an admission of a defect, because technical service bulletins are routinely issued to dealers to help diagnose and repair typical complaints. (American Honda Motor Co. v. Superior Court (2011) 199 Cal.App.4th 1367, 1378.) As our Supreme Court has pointed out: "Even a vehicle with a defect is not necessarily a lemon. A 'nonconformity' requiring the vehicle's refund or replacement under our law must "substantially impair[] the use, value, or safety of the new motor vehicle." (Civ. Code, § 1793.22, subd. (e)(l).) Not every customer complaint about a new car, or even every valid customer complaint, rises to that level. And customers and manufacturers frequently disagree about whether a defect has been repaired or a reasonable number of attempts have been made." (Johnson v. Ford Motor Co. (2005) 35 Cal.4th 1191, 1211.)

Finally, the existence of defect is not a breach of warranty. Where, as here, a warranty provides for the limited remedy of repair or replacement of defective

1  parts, a buyer may only sue for damages if the limited remedy "fail [s] of its

2  essential purpose."   (See Cal. U. Corn. Code, §§ 2719, subds. (1)(a) and (2);

3  Gavaldon v. DaimlerChrysler Corp. (2004) 32 Cal.4th 1246, 1264-65.) A repair

4  warranty fails of its essential purpose when the warrantor repeatedly fails to

5  correct the defect as promised. (See Seely v. White Motor Co. (1965) 63 Cal.2d 9,

6  14.)

7          Civil Code section 1793.22, subdivision (b) sets forth the standards for

8  determining whether the manufacturer has had a reasonable opportunity to make

9  repairs, whether the vehicle is out of service for more than 30 calendar days or the

10 same "nonconformity" has been the subject of at least four repair attempts by the

11 manufacturer or its agent.   (Civ. Code, § 1793.22; Krieger v. Nick Alexander

12 Imports, Inc. (1991) 234 Cal.App.3d 205.)  These provisions are "designed to give

13 recourse to the buyer of a new automobile that suffers from the same defect

14 repeatedly, or is out of service for cumulative repairs for an extended period." (Id.)

15          In this case, plaintiff cannot establish a breach of express warranty under

16 Song-Beverly.  BMW NA contends there were no defects covered by the warranty

17 that could not be repaired and that substantially impaired the use, value or safety

18 of the vehicle.

19 **3.       The Aggregate Test Does Not Apply**

20          Plaintiffs may argue that they only had to present the vehicle twice for

21 repair.   They would be wrong. In Robertson v. Fleetwood Travel Trailers of

22 California, Inc. (2006) 144 Cal.App.4th 785, 798-799, the court stated, citing

23 Oregel v. American Isuzu Motors, Inc. (2001) 90 Cal.App.4th 1094, 1103:

24

25          A plaintiff pursuing an action under the Song-Beverly Act has the
           burden to prove the following elements: (1) the product had a defect

26          or nonconformity covered by the express warranty; (2) the product
           was presented to an authorized representative of the manufacturer for

27          repair; and (3) the manufacturer or its representative did not repair the

28

defect or nonconformity after a reasonable number of repair attempts

....

As shown above, plaintiffs must show that "the manufacturer or its representative did not repair the defect or nonconformity after a reasonable-number of repair attempts." This language strongly suggests that if there is more than one defect or nonconformity, the manufacturer or its representative must fail to repair each defect or nonconformity after a reasonable number of repair attempts. A review of jury instructions supports this interpretation. Judicial Council of California Civil Jury Instruction 3201 outlines the elements as follows:

1. That [name of plaintiff] [bought/leased] [a/an] [ new motor vehicle] [from/distributed by/manufactured by] [name of defendant];
2. That [ name of defendant] gave [name of plaint(f/] a written warranty that [ describe alleged express warranty]:
3. That the vehicle had [a] defect[s] that [was/were] covered by the warranty and that substantially impaired its use, value, or safety to a reasonable person in
[name of plaintiff]'s situation;
4. [That [ name of plaintiff] delivered the vehicle to  name of defendant] or its
authorized repair facility *for repair of the defect[s]* ;]
[or]
[That [ name of plaintiff] notified [ name of defendant] in writing of the need for
repair of the defect[ s] because [he/she] reasonably could not deliver the vehicle
to [ name of defendant] or its authorized repair facility because of the nature of
the defect[ s ];]
5. That [ name of defendant] or its authorized repair facility failed to repair the
vehicle to match the written warranty after a reasonable number of opportunities
to do so: and
6. That [name of defendant] did not promptly replace or buy back the vehicle.

(Emphasis Added.)

In Mega RV Corporation v. HWH Corporation (2014) 225 Cal.App.4th 1318, 1333, the court stated that "[t]he Act 'was enacted to address difficulties faced by consumers in enforcing express warranties. Consumers frequently were frustrated by the inconvenience of having to return goods to the manufacturer for repairs and by repeated unsuccessful attempts to remedy the **problem** . ... ' ... " (Emphasis Added.) This language further indicates that the Act was enacted because of repeated attempts to remedy-a-repeating problem.

In Duale v. Mercedes-Benz USA, LLC (2007) 148 Cal.App.4th 718, 721 fn. 1, citing Murillo v. Fleetwood Enterprises. Inc. (1998) Cal.4th 985, 989-990, the court wrote:

> The Song-Beverly Act" 'regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclose of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties'" and" 'gives recourse to the buyer of a new automobile that suffers from the same defect repeatedly, or is out of service for cumulative repairs for an extended period.'"

(Internal citations and brackets omitted.)

Set forth in Section 1793.22, the Tanner Consumer Protection Act, are certain presumptions that may be relied upon by the buyer in connection with an express warranty claim. Subdivision (b) states:

> It shall be presumed that a reasonable number of attempts have been made to conform a new motor vehicle to the applicable express warranties if, within 18 months from delivery to the buyer or 18,000 miles on the odometer of the vehicle, whichever occurs first, one or more of the following occurs:
>
> (1) The same nonconformity results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven and the nonconformity has been subject to repair two or more times by the

manufacturer or its agents, and the buyer or lessee has at least once directly notified the manufacturer of the need for the repair of the nonconformity.

(2) The same nonconformity has been subject to repair four or more times by the manufacturer or its agents and the buyer has at least once directly notified the manufacturer of the need for the repair of the nonconformity.

(3) The vehicle is out of service by reason of repair of nonconformities by the manufacturer or its agents for a cumulative total of more than 30 calendar days since delivery of the vehicle to the buyer. ...

While plaintiffs might cite Section 1793.22 to support their position that the repairs under Section 1793.2 do not need to be to the same defect, the provision in Section 1793 .22 were previously contained in Section 1793.2.  At the time of the decision in <u>Krieger v. Nick Alexander Imports, Inc.</u> (1991) 234 Cal.App.3d 205, section 1793.2, subdivision (e)(1) provided in pertinent part:

... "It shall be presumed that a reasonable number of attempts have been made to conform a new motor vehicle to the applicable express warranties if, within one year from delivery to the buyer or 12,000 miles on the odometer of the vehicle, whichever occurs first, either (A) the same nonconformity has been subject to repair four or more times by the manufacturer or its agents and the buyer has at least once directly notified the manufacturer of the need for the repair of the nonconformity, or (B) the vehicle is out of service by reason of repair of nonconformities by the manufacturer or its agents for a cumulative total of more than 30 calendar days since delivery of the vehicle to the buyer. ...

Id. at 213, fn. 4.

While these provisions "simply embody the Legislature's decision to declare presumptive standards of what is 'reasonable' for purposes of subdivision (d)" (see

1 | Ibrahim v. Ford Motor Co. (1989) 214 Cal.App.3d 878, 885-886), they show that
2 | the Act was intended to address situations of repeat repairs of the same defect and
3 | extended periods of the vehicle being out of service for repairs of any defects.

4 | **4.    There Are No Grounds for a Civil Penalty**

5 | In order to obtain a penalty for breach of express warranty, plaintiffs must
6 | show that BMW NA improperly denied restitution or "willfully" violated its
7 | obligations under Song-Beverly. (Civ. Code, § 1794, subd. (c) e)(2).)  A failure to
8 | refund or replace was not willful if the manufacturer reasonably and in good faith
9 | believed the facts did not call for refund or replacement.  "This might be the case,
10 | for example, if the manufacturer reasonably believed the product did conform to
11 | the warranty, or a reasonable number of repair attempts had not been made, or the
12 | buyer desired further repair rather than replacement or refund."   Kwan v.
13 | Mercedes-Benz of North America, Inc. (Cal.App.1st Dist. 1994) 23 Cal.App.4th
14 | 173, 185.

15 | In this case, the evidence will show BMW NA evaluated the repair history
16 | in good faith and made the determination that the subject vehicle did not qualify.
17 | No verified warranty concern was ever presented an unreasonable number of
18 | repair attempts.

19 | **5.    The Missing Evidence**

20 | In this case, the key piece of evidence is missing: the Subject Vehicle.
21 | Although Plaintiffs made a repurchase request just a month before lease turn in,
22 | they returned the vehicle and reported no concerns.   Plaintiffs cannot be permitted
23 | to recover damages allowed under the Song Beverly Consumer Warranty Act
24 | when Plaintiffs failed to preserve the vehicle. Plaintiffs will argue that Martinez v.
25 | Kia Motors Inc. 193 Cal. App. 4th 187 (2011) allows them full restitution
26 | damages, even though they no longer possess vehicle, however, Martinez is
27 | distinguishable.   The subject vehicle in Martinez was repossessed and was sent to
28 | an authorized dealer where the warrantable repair was performed.  A lawsuit then

1  followed.   Initially, Kia was granted summary judgment on the basis that a

2  plaintiff was not entitled to any remedy because she did not possess the vehicle.

3  The Fourth District disagreed holding that "...a plaintiff does not need to possess

4  or own the vehicle to avail himself or herself to the Act's remedies". Id. at 192.

5  Martinez did not hold that at any time a consumer's vehicle is repossessed, they

6  are entitled to full restitution.  Rather, the court simply held that they do not to

7  need to possess the vehicle to seek remedies under the Song Beverly Consumer

8  Warranty Act.

9       This case is not like Martinez in that Plaintiffs' deprived BMW NA of the

10  opportunity to inspect the vehicle and is alleging that the vehicle is unrepaired,

11  whereas in Martinez, Kia had an opportunity to inspect and moreover the vehicle

12  was repaired.  Additionally, in this case, there is evidence that there was accident

13  damage to the vehicle that BMW NA can never investigate.  Not only is the most

14  important piece of evidence in this breach of warranty case not available, it is

15  significantly changed by the passage of time and continued use.  It is not the same

16  vehicle as it was when the vehicle was sold at auction over a year ago.

17       Without the Subject Vehicle, BMW NA is left to rely on the paper record

18  and testimony.  Plaintiffs testified that they heard constant "knocking" in the

19  engine and frequently felt "shaking" in the steering wheel.   They were unable to

20  identify when they heard these concerns, under what conditions, or exactly how

21  often.  Indeed, the repair orders themselves show that they complained about the

22  "knocking" just once on November 3, 2016 at 25,606 miles.  At that visit, it was

23  found that Plaintiffs were filling with low octane gas which could cause knocking

24  in the engine.   The repair orders also show that Plaintiffs only complained about

25  the "shaking" complaint one time on September 8, 2016 at 23,052 miles.   The

26  repair orders are also replete with evidence signs of misuse, abuse, negligence and

27  evidence that Plaintiffs' concerns were caused by unauthorized or unreasonable

28  use such as filing their tank with low octane fuel.  For example, Plaintiffs brought

the vehicle in for a check engine light on December 19, 2015 with no fuel in the tank causing multiple misfires.   The vehicle was also presented with a bent tie rod evidencing an impact (April 9, 2014) and multiple visits for bubbles in the tires that are normally caused by impact damage.

6.    **No Prejudgment Interest**

Finally, Plaintiffs are not entitled to pre-judgment interest even if they prevail.   BMW NA served a Cal. Civ. Code §998 Offer to Compromise for repurchase on July 18, 2017.  Plaintiffs did not accept nor did they object.[1]

D.    **SUMMARY STATEMENT OF AFFIRMATIVE DEFENSES**

BMW NA plans to pursue the following affirmative defenses:

Affirmative Defense 1: Failure to State a Cause of Action.

Affirmative Defense 2: Duration of Implied Warranty – New Vehicle.

Affirmative Defense 3: Subject Vehicle Fit for Its Intended Purpose.

Affirmative Defense 4: No Timely Revocation of Acceptance.

Affirmative Defense 5: Unreasonable or Unauthorized Use.

Affirmative Defense 6: Failure to Preserve Evidence.

Affirmative Defense 7: Negligence, Improper Maintenance or other Exclusion

Affirmative Defense 9: Good Faith Evaluation

E.    **REQUIRED ELEMENTS FOR AFFIRMATIVE DEFENSES**

Elements Required to Establish Defendant's Affirmative Defense No. 1 of Plaintiffs' Failure to State a Cause of Action.

---

[1]Settlement offers made be made under state offer of judgment rules. [see *Jones v. United Space Alilance, L.L.C.* 494 F. 3d (11 Cir. 2007) – state offer -of- judgment rules deemed "substantive" for *Erie* purposes. Cal. Civ. Prp. § 998 provides a penalty where either party fails to accept a pretrial settlement offer and fails to obtain a more favorable judgment at trial.  (Weil & Brown, Fed. Prac. Guide: Civ. Prp. Before Trial (The Rutter Group 2017) ¶15150.2 *et. seq.*) The present action was removed on ground of diversity on September 12, 2017 [Dkt. No. 1]

1    BMW NA asserts this defense is based on the absence of evidence.

2    BMW NA's assertion is based on Plaintiff's failure to establish an essential
3    element of her claims against BMW NA.

4    Elements Required to Establish Defendant's Affirmative Defense No. 2 of
5    Duration of Implied Warranty.

6    The duration of the implied warranty for new goods is one year, and is only
7    intended to cover those defects that manifest or surface during that one year time
8    frame.  Civil Code section 1791.1(c).

9    BMW NA's assertion is based on plaintiff's failure to establish an essential
10   element of her claims against BMW NA

11   Elements Required to Establish Defendant's Affirmative Defense No. 3 of
12   Subject Vehicle Fit for Its Intended Purpose.

13   BMW NA alleges that the vehicle was fit for its ordinary purpose of
14   providing transportation at all times. American Suzuki Motor Corporation v.
15   Superior Court (1995) 37 Cal.App.4th 129.

16   Elements Required to Establish Defendant's Affirmative Defense No. 4 of
17   Revocation of Acceptance Untimely.

18   BMW NA alleges that plaintiff did not revoke acceptance within a
19   reasonable time and/or before substantial change in the subject vehicle's condition,
20   therefore barring restitution as a remedy for plaintiff's breach of implied warranty
21   claim

22   Elements Required to Establish Defendant's Affirmative Defense No. 5 of
23   Unreasonable or Unauthorized Use.

24   BMW NA asserts this defense on evidence that Plaintiffs filled the tank
25   with unauthorized low octane fuel, brought the vehicle with no fuel, brought the
26   vehicle in with impact damage or caused some concerns by unreasonable or
27   unauthorized use.  Civil Code § 1794.3.

28   / / /

1       <u>Elements Required to Establish Defendant's Affirmative Defense No. 6 of</u>

2 <u>Failure to Preserve Evidence</u>

3       BMW NA asserts this affirmative defense on evidence that Plaintiffs

4 disposed of the vehicle four months before the lawsuit and failed to preserve it.

5 Although Plaintiffs made a repurchase request just a month before lease turn in,

6 they returned the vehicle and reported no concerns.   Plaintiffs should not be

7 permitted to recover damages allowed under the Song Beverly Consumer

8 Warranty Act when Plaintiffs failed to preserve the vehicle.   Plaintiffs will argue

9 that <u>Martinez v. Kia Motors Inc</u>. 193 Cal. App. 4th 187 (2011) allows them full

10 restitution damages, even though they no longer possess vehicle, however,

11 <u>Martinez</u> is distinguishable.   The subject vehicle in <u>Martinez</u> was repossessed and

12 was sent to an authorized dealer where the warrantable repair was performed.   A

13 lawsuit then followed.   Initially, Kia was granted summary judgment on the basis

14 that a plaintiff was not entitled to any remedy because she did not possess the

15 vehicle.   The Fourth District disagreed holding that "…a plaintiff does not need to

16 possess or own the vehicle to avail himself or herself to the Act's remedies".   <u>Id</u>. at

17 192.   <u>Martinez</u> did not hold that at <u>any time</u> a consumer's vehicle is repossessed,

18 they are entitled to full restitution.   Rather, the court simply held that they do not

19 to possess the vehicle to seek remedies under the Song Beverly Consumer

20 Warranty Act.

21       This case is not like <u>Martinez</u> in that Plaintiffs' deprived BMW NA of the

22 opportunity to inspect the vehicle and is alleging that the vehicle is unrepaired.

23 Moreover, there is evidence that there was accident damage to the vehicle that

24 BMW NA can never investigate.   Not is the most important piece of evidence in

25 this breach of warranty case is not available, it is significantly changed by the

26 passage of time and continued use.   It is not the same vehicle as it was when the

27 vehicle was sold at auction over a year ago.

28 / / /

1  Elements Required to Establish Defendant's Affirmative Defense No. 7 of
2  Negligence, Improper Maintenance or Other Exclusion
3      BMW NA asserts this defense on evidence that Plaintiffs filled the tank
4  with unauthorized low octane fuel, brought the vehicle with no fuel, brought the
5  vehicle in with impact damage or caused some concerns by unreasonable or
6  unauthorized use.
7      Elements Required to Establish Defendant's Affirmative Defense No. 9 of
8  Good Faith Evaluation
9      Plaintiffs requested that BMW NA repurchase the Subject Vehicle on
10 November 16, 2016.  BMW NA promptly evaluated the service file and the
11 service history and denied Plaintiff's claim in good faith.
12 **F.    KEY EVIDENCE IN SUPPORT OF AFFIRMATIVE DEFENSES**
13     Affirmative Defense 1: Plaintiffs' Failure to State a Cause of Action
14         1.    December 15, 2013 Lease Agreement
15         2.    BMW NA's New Vehicle Limited Warranty
16         3.    Testimony of Plaintiffs
17         4.    Testimony of Jose Conde
18         5.    Testimony of Luis Holguin, Expert Report and Exhibits
19         6.    Testimony of Beverly Hills BMW Technicians
20         7.    Beverly Hills BMW's Service File
21         8.    Subject Vehicle's Warranty Vehicle Inquiry
22 BMW NA further assert this defense is based on the absence of evidence.
23     Affirmative Defense 2: Duration of Implied Warranty
24         1.    BMW NA's New Vehicle Limited Warranty
25         2.    Testimony of Plaintiffs
26         3.    December 15, 2013 Lease Agreement
27     Affirmative Defense 3: Subject Vehicle Fit for Its Intended Purpose
28         1.    BMW NA's New Vehicle Limited Warranty

2.      Testimony of Plaintiffs

3.      Testimony of Jose Conde

4.      Testimony of Luis Holguin, Expert Report and Exhibits

5.      Beverly Hills BMW's Service File

6.      The Subject Vehicle's Warranty Vehicle Inquiry

Affirmative Defense 4: Revocation of Acceptance Untimely

1.  BMW NA's New Vehicle Limited Warranty

2.  December 15, 2013 Lease Agreement

3.  Testimony of Plaintiffs

BMW NA further asserts this defense on the absence of evidence of timely revocation.

Affirmative Defense 5: Unreasonable or Unauthorized Use

1.  Service and Warranty Information for the Subject Vehicle

2.  Testimony of Luis Holguin, Expert Report and Exhibits

3.  Testimony of Plaintiffs

4.  Beverly Hills BMW's Service File

5.  Testimony Beverly Hills BMW Technicians

6.  Testimony of Matthew Morris

Affirmative Defense 6: Failure to Preserve Evidence

1.      Testimony of Plaintiffs

2.      Lease End Inspection Form

3.      Beverly Hills BMW's Service File

4.      Lease End Inspection Form

Affirmative Defense 7: Negligence, Improper Maintenance or Other Exclusion

1.  Service and Warranty Information for the Subject Vehicle

2.  Testimony of Luis Holguin, Expert Report and Exhibits

3.  Testimony of Plaintiffs

4. Beverly Hills BMW's Service File

5. Testimony Beverly Hills BMW Technicians

6. Testimony of Matthew Morris

Affirmative Defense 9: Good Faith Evaluation

1. Service Request Details

2. Testimony of Plaintiffs

3. Testimony of Jose Conde

4. Service History Recap

5. Beverly Hills BMW's Service File

G. **(NOT APPLICABLE – NO THIRD PARTIES)**

Not applicable.

H. **ANTICIPATED EVIDENTIARY ISSUES**

BMW NA has filed the following Motions *in Limine*

1. Motion *in Limine* No. 1 to Exclude Improper Legal Opinions specifically precluding witnesses testifying that concerns "substantially impaired" the use, value, or safety of the subject vehicle; [Dkt. No. 15]

2. Motion *in Limine* No. 2 to Exclude Reference to the Phrase "Lemon Law" or "Lemon;" [Dkt. No. 16]

3. Motion *in Limine* No. 3 to Exclude Non-Recoverable Incidentals and Consequential Damages; [Dkt. No. 17]

4. Motion *in Limine* No. 4 to Preclude Introduction of Evidence of Concerns Presented Only Once are excludable under Silvio v. Ford Motor Company, 109 Cal.App.4th 1205, 1208 (2003); [Dkt. No. 18]

5. Motion *in Limine* No. 5 to Exclude that Repair Orders Alone Substantially Impair Value; [Dkt. No. 19]

6. Motion *in Limine* No. 6 to Exclude Reptile Theory Argument; [Dkt No. 20]

7.  Motion *in Limine* No. 7 to Exclude Evidence of Emotional Distress; [Dkt. No. 21]

8.  Motion *in Limine* No. 8 to Exclude Refence to Other Vehicles, Claims, or Incidents;  [Dkt. No. 22]

9.  Motion *in Limine* No. 9 to exclude plaintiff's subjective consumer expectations about the design and usage of the subject vehicle as proof of nonconformities; [Dkt. No. 23]

10. Motion *in Limine* No. 10 to exclude Plaintiff's expert for failure to serve a timely expert report; [Dkt. No. 24]

11. Motion *in Limine* No. 11 to exclude evidence not disclosed in discovery, Initial Disclosures, or Pretrial Disclosures; [Dkt. No. 25]

12. Motion to Dismiss or in the alternative Motion *in Limine* No. 12 for evidentiary sanctions for failure to preserve evidence; [Dkt No. 26] and

13. Motion *in Limine* No. 13 to exclude evidence of repairs or concerns not covered by warranty. [Dkt. No. 27]

I.  **IDENTIFICATION OF ANY ISSUES OF LAW**

BMW NA reference Section C on Key Evidence and its Motions *in Limine* (Dkt Nos. 15 to 27)


DATED:  March 19, 2018                    BOWMAN AND BROOKE LLP


BY:    /s/ Corinne D. Orquiola
       Brian Takahashi
       Richard L. Stuhlbarg
       Corinne D. Orquiola
       Attorneys for Defendant
       BMW OF NORTH AMERICA, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2018, I filed the foregoing document entitled **MEMORANDUM OF CONTENTIONS OF FACT AND LAW** with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

/s/Corinne D. Orquiola
Corinne D. Orquiola